LEE, EXECUTRIX *v.* ERICKSON.

5-971                                                    291 S. W. 2d 238

Opinion delivered May 21, 1956.

[Rehearing denied June 25, 1956.]

*Parker Parker,* for appellant.

*Robert J. White, Bob Bailey* and *Bob Bailey, Jr.,* for appellee.

PAUL WARD, Associate Justice. Appellees, Andrew Erickson, Ben George, and Ray Brown, entered into a partnership to farm certain lands belonging to George during the year 1951. In the early part of 1951, for the purpose above mentioned, appellees purchased from the D. W. Lee Implement Company certain farming equipment including a tractor, cultivators, row planters and middlebuster discs, hereafter referred to as equipment. These articles were paid for in cash. On May 15th of the same year appellees borrowed $1,000 from said Implement Company and executed a note therefor. After a two months illness D. W. Lee died on May 27, 1953 [after this suit was filed in January, 1953] and Nora Mae Lee was appointed executrix, and as such was substituted for the D. W. Lee Implement Company in the litigation. We will hereafter refer to appellant as the Implement Company.

On about September 15, 1951 appellees purchased a used combine from the Implement Company for which they made a part payment, leaving a balance due of $844.98. On December 17, 1951 appellees refinanced their indebtedness to the Implement Company by executing another note in the amount of $1,854.47.

On January 21, 1953 D. W. Lee [for the Implement Company] filed suit against appellees on said note for $1,854.47. After a lengthy hearing the trial court held that the Implement Company, by repossessing the equipment and combine, waived its right to sue on the note,

holding that appellant could have its option of taking the equipment and the combine or accepting the sum of $405 which had been deposited in the court as the proceeds from a public sale under an attachment, which sale had not been approved by the court. We conclude that it was error for the trial court to hold that the Implement Company had waived its right to sue on the note for $1,854.47.

The material portions of the pleadings, facts, and circumstances we gather from the record, which is somewhat contradictory and confusing, are substantially as hereafter set out. It appears conclusively that appellees were indebted to the Implement Company in the amount alleged. One of the partners did not sign the note but the testimony is clear that he was bound as a partner. The note sued on had been assigned by the Implement Company to a finance company and the evidence is not clear that the note had been returned to the Implement Company, and appellant was unable to produce the original note. [However the trial court apparently was convinced that appellant was the owner of the note, and we cannot say it was wrong.] The record contains a purported copy of a conditional sales contract dated May 15, 1951 [the same day appellees borrowed the $1,000] in which the Implement Company purported to retain title to the equipment mentioned above. This instrument shows an unpaid balance of $1,038.80, and we assume that it was given to secure the loan for $1,000. The record contains the purported copy of a conditional sales contract dated September 17, 1951 [the date the used combine was purchased by appellees] in which the Implement Company retained title to said combine, showing a balance due of $844.98. The testimony shows that all of the indebtedness of appellees to the Implement Company was refinanced on December 14, 1951, and the record contains a purported copy of a conditional sales agreement as of that date in which the Implement Company purported to retain title to the combine and the equipment, showing a balance of $1,854.47.

When the Implement Company filed suit on January 21, 1953 on the $1,854.47 note it asked for an attachment against appellees for the equipment and the combine. The sheriff served the attachment and took the equipment and combine into his possession, and, under orders of the court, advertised and sold the same for $405. It is not shown to whom the sale was made, but the court did not approve the sale, but ordered the money paid into court. Later in the trial of the cause testimony was introduced showing that, after the suit was filed, appellant took charge of all of the equipment and the combine prior to the issuance of the attachment. To corroborate this, there was introduced into the record a chattel mortgage dated May 2, 1953 wherein the combine and equipment were mortgaged to the Merchants National Bank of Ft. Smith, said chattel mortgage being signed "D. W. Lee Implement Company" (by) "Juanita Lee Edwards." There is, however, nothing in the record to show what authority Juanita Lee Edwards had to sign the chattel mortgage.

As we view the above factual situation it appears to us that when the Implement Company, on December 14, 1951, together with the appellee partners, executed the purported conditional sales contract the Implement Company had no power to retain title to the equipment and combine. It is undisputed that all of the equipment was paid for in cash and of course the title passed from the Implement Company to the partners. The combine had been bought some 4 months previously, and the new note which was executed on December 15, 1951 included the $1,000 borrowed money. It is our opinion therefore that said purported conditional sales contract should be treated as an equitable mortgage. This being true it makes little difference in the result we reach in this case whether or not the Implement Company had in fact taken possession of the equipment and combine after suit was filed. Moreover, the contention on the part of appellees that the Implement Company took possession of the equipment and combine is hard to reconcile with the undisputed fact that the sheriff levied upon and took possession of same at a later date.

Treating the Implement Company as a mortgagee it did not, by taking possession of the equipment and combine, waive its right to recover on the note, and it can be charged only with the fair market value of said equipment and combine. The situation existing here is parallel to the situation set forth in the case of *Wells* v. *Derrick*, 225 Ark. 993, 287 S. W. 2d 4, where we quoted with approval: " 'Where mortgagees took possession of mortgaged chattels, but failed to sell them under the power of sale in the mortgage, they are chargeable with their market value at the time of their conversion.' " " 'Where the defendant is a mortgagee, who was entitled to the possession, with power to sell at the time of the seizure or conversion, and who has become a wrongdoer by reason of the manner of acquiring possession, or in the irregularity of the sale, he is liable to the mortgagor (in the absence of proof of special damages) only for the value of the property at the time of the conversion, less the amount of mortgage debt.' " There is no proof in this record of any special damages.

Upon remand, the trial court is directed to enter judgment against Andrew Erickson, Ben George, and Ray Brown for the full amount of the note sued on plus interest, and the said appellees to be given their option of crediting against said judgment the amount of $405 [the proceeds of the sale] or to have another sale and credit the proceeds thereof against said judgment, or the privilege of retaining said equipment and combine and paying the full amount of the judgment.

Reversed and remanded for further procedure in accordance with the conclusions above set out.